UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE MCKESSON GOVERNMENTAL ENTITIES AVERAGE WHOLESALE PRICE LITIGATION | Master File No.: 1:08-CV-10843-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>*San Francisco Health Plan*, No. 1:08-CV-10843-PBS | |

## SAN FRANCISCO HEALTH PLAN'S MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY A CALIFORNIA CLASS ACTION

# TABLE OF CONTENTS

**PAGE**

I.      FACTS ...................................................................................................................1

II.     ARGUMENT .........................................................................................................4

    A.      Rule 23 Standards in the First Circuit ......................................................4

    B.      Plaintiff Satisfies the Rule 23(a) Requirements ........................................5

        1.      The proposed California Public Payor Class meets the numerosity requirement because joinder of all members is impracticable....................5

        2.      The commonality requirement is met because questions of law and fact are common to all Class members. .......................................................6

        3.      Plaintiff meets the typicality requirement because their claims arise from the same course of conduct alleged by the Class. .............................7

        4.      Plaintiff meets the adequacy requirement because its interests will not conflict with those of other Class members and because it has chosen qualified, experienced counsel, who are capable of vigorously conducting the proposed litigation.............................................................8

    C.      Plaintiff Meets the Requirement of Rules 23(b)(3) .................................8

        1.      Common questions predominate over individual issues.............................8

        2.      The grounds for limiting *Carpenters* class damages through 2003 are not present in the current litigation. ............................................................9

        3.      Class treatment is superior to other forms of litigation............................12

        4.      Class damages can be easily calculated. ...................................................14

        5.      State law issues are manageable and create common issues. ....................14

III.    CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

<u>PAGE</u>

## CASES

*Andrews v. Bechtel Power Corp.*,
   780 F.2d 124 (1st Cir. 1985) ...................................................................8

*Ansari v. New York Univ.*,
   179 F.R.D. 112 (S.D.N.Y. 1998) ............................................................5

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   869 P.2d 454 (Cal. 1994) .......................................................................15

*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 326 (E.D. Mich. 2001) ..........................................................4

*Hopson v. Hanesbrands Inc.*,
   2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) ........................5

*Larocca v. Borden, Inc.*,
   276 F.3d 22 (1st Cir. 2002) ....................................................................10

*McCuin v. Secretary of Health & Human Servs.*,
   817 F.2d 161 (1st Cir. 1987) ...................................................................5

*Monex Int'l, Ltd. v. CFTC*,
   83 F.3d 1130 (9th Cir. 1996) ...................................................................9

*In re Neurontin Mktg. & Sales Practices Litig.*,
   244 F.R.D. 89 (D. Mass. 2007) ....................................................4, 6, 7, 8

*New Eng. Carpenters Health Bens. Fund. v. First Databank, Inc.*,
   244 F.R.D. 79 (D. Mass. 2007) ...................................................... *passim*

*New Eng. Carpenters Health Bens. Fund v. First Databank, Inc.*,
   248 F.R.D. 363 (D. Mass. 2008) ..........................................................9, 14

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008) ........................................................................9

*Pacific Gas & Elec. Co. v. Bear Stearns & Co.*,
   791 P.2d 587 (Cal. 1990) .......................................................................15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   230 F.R.D. 61 (D. Mass. 2005) ..............................................................14

001821-16  310674 V1

*Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*,
   43 F.R.D. 452 (E.D. Pa. 1968)........................................................................5

*In re Potash Antitrust Litig.*,
   159 F.R.D. 682 (D. Minn. 1995)..............................................................8, 13

*In re Relafen Antitrust Litig.*,
   218 F.R.D. 337 (D. Mass. 2003).................................................................12

*In Re Relafen Antitrust Litig.*,
   221 F.R.D. 260 (D. Mass. 2004)...................................................................5

*Smilow v. Southwestern Bell Mobile Sys.*,
   323 F.3d 32 (1st Cir. 2003)...........................................................................8

*Swack v. Credit Suisse First Boston*,
   230 F.R.D. 250 (D. Mass. 2005)...................................................................5

*United States v. Castellano*,
   349 F.3d 483, 484 (7th Cir. 2003) ..............................................................10

*Williams v. Mohawk Indus.*,
   2009 U.S. App. LEXIS 11391 (11th Cir. May 28, 2009)...............................4

## STATUTES

CAL. BUS. & PROF. CODE § 17206 ............................................................1, 6

CAL. GOV'T CODE § 12652 ........................................................................1, 6

## MISCELLANEOUS

22 AM JUR 2D DAMAGES § 354 .....................................................................9

D. DOBBS, HANDBOOK ON THE LAW OF REMEDIES § 3.7 (1973).................10

RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 .................................14

001821-16 310674 V1

Plaintiff San Francisco Health Plan ("SFHP" or "Plaintiff") moves the Court to certify a class action consisting of California Public Payors to collectively resolve RICO fraud and tortious interference claims against McKesson.[1]  Like the TPPs in *Carpenters*, members of the proposed California Class were uniformly impacted by McKesson's scheme to increase brand-name drug prices and suffered the same type of losses.  California Public Payors lost roughly a half billion dollars as a result of the scheme.[2]  SFHP proposes a Class comprised of:

> All governmental entities, agencies and political subdivisions in the State of California, including the State of California itself, that paid for the brand name drugs listed in Appendix A and whose payments were tied to AWP.

This Class is virtually identical to the private third-party payor ("TPP") class certified in *New England Carpenters v. First DataBank*, No. 1:05:11148, except that members of the proposed Class are Public Payors from the State of California and the proposed class period extends through the present.  A longer class period is warranted in this action because there is no evidence of pushback, concerns about individual issues of causation are addressed in the method of calculating damages and individual issues of mitigation or offset of damages are also absent because McKesson is not entitled to that defense as a matter of law.

## I.     FACTS

The Court is intimately familiar with the facts alleged against McKesson and its scheme to increase the benchmark price of brand prescription drugs and the facts underlying this litigation will not be repeated.  With respect to Public Payors, McKesson was fully aware that

---

[1] The Complaint also raises false claims on behalf of the State of California and Unfair Competition claims on behalf of the People of California.  The City Attorney of the City and County of San Francisco is statutorily empowered to bring these claims on behalf of the State and the People of California and does not rely on Rule 23 certification to do so.  Second Amended Complaint ("SAC"), ¶¶ 30, 31; CAL. GOV'T CODE § 12652(b)(2); CAL. BUS. & PROF. CODE § 17206(a).

[2] Declaration of Raymond S. Hartman in Support of the Class of California Payors ("Hartman Cal. Decl."), Table 1.

they relied on the AWP for reimbursement of brand drugs.[3]  McKesson maintained a Public

Affairs Department to track federal and state developments that affected pharmacy sales.[4]

McKesson also actively lobbied the federal and state governments on its own behalf and on

behalf of its customers.[5]  For example, when Congress changed the reimbursement formula for

generics from an AWP-based reimbursement model to a model based on the Average

Manufacturer Price ("AMP"), McKesson successfully lobbied Congress to increase the

reimbursement limit from AMP + 20% to AMP + 250%.[6]  McKesson also lobbied against

government importation of lower-priced drugs from Canada, knowing that "MCK customers will

continue to turn to us seeking information/solutions."[7]

    McKesson was fully aware of the impact its scheme would have on Public Payors.

Indeed, a McKesson employee specifically questioned Bob James, Director of Brand

Pharmaceutical Product Management and the principal architect of the scheme, about the impact

of rising AWPs on public payors:

> Has anyone researched what impact this will have on
> Medicaid/Medicare reimbursement in states where its [sic] still
> based on AWP?

James responded:

> *Dale, this is not our issue.  But, I have thought about it a lot.*  One
> of the unintended consequences is that Retail Customers will
> potentially be more profitable.[8]

---

[3] Plaintiffs' Proffer of Evidence Common to the Class in Support of Class Certification ("Proffer") at 4.

[4] *Id.* at 2-4.

[5] *Id.* at 4.

[6] *Id.* at 5.

[7] *Id.* at 4-5.

[8] *Id.* at 6 (emphasis added).

001821-16 310674 V1

Public Payors in the State of California reimburse pharmacies on the basis of AWPs and

were immediately and uniformly harmed by the scheme:

> The 5% Scheme caused Class-wide impact and injury.  The AWPs
> of hundreds of drugs (reflecting more than 1400 NDCs) were
> clandestinely raised by simply reprogramming the parameter in the
> FDB computerized information system which calculates the AWPs
> reported to the industry based on the WACs reported to FDB by
> the drug manufacturers.  Since these AWPs are the contractual
> basis of reimbursement rates paid by the Class members, this
> reprogramming had an immediate impact upon transaction prices,
> an impact no different than that of a straightforward price-fixing
> conspiracy.[9]

For example, Plaintiff contracts with a pharmacy benefits administrator to carry out its

claims administration.  Similar to many pharmacy benefit management contracts, Plaintiff's

contract applies an AWP-based reimbursement formula for the purchase of brand drugs.  SAC,

¶ 28.

Similarly, prior to 2003, putative Class member Medi-Cal (California's Medicaid

Program) typically reimbursed pharmacies at the lower of AWP - 5% or the Direct Price for a

handful of selected manufacturers, or the Federal Upper Limit ("FUL") price or California

Maximum Allowable Ingredient Cost ("MAIC").[10]  Effective 2003, the Legislature changed

Medi-Cal's reimbursement formula to the lower of AWP - 10%, or FUL or MAIC and Direct

Price was no longer used.[11]  Effective October 1, 2004, the California Legislature reduced

Medi-Cal's reimbursement to the lower of AWP - 17%, or FUL or MAIC.[12]

Thus, the proposed Class suffered a common injury based on the same set of allegations.

---

[9] Hartman Cal. Decl., ¶ 19.

[10] Medi-Cal Pharmacy Benefits Division Pricing Calculation Examples (available at
http://www.dhcs.ca.gov/provgovpart/Documents/sample%20price%20calculations.pdf.) at 2.

[11] *Id.*

[12] *Id.*

- 3 -

## II.    ARGUMENT

### A.    Rule 23 Standards in the First Circuit

While class actions have long been recognized by the courts as an essential tool for adjudication of cases involving multiple claims and similar factual and/or legal inquiries, a "district court must conduct a 'rigorous analysis' to determine whether a proposed class meets the exacting prerequisites established by Rule 23." *New Eng. Carpenters Health Bens. Fund. v. First Databank, Inc.*, 244 F.R.D. 79, 84 (D. Mass. 2007).

> In "determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."  However, "a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case."

*In re Neurontin Mktg. & Sale Practices Litig.*, 244 F.R.D. 89, 104 (D. Mass. 2007) (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) (internal citation omitted)).

To determine whether the Rule 23 factors are satisfied, courts undertake "an analysis of the issues and the nature of required proof at trial to determine whether the matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or *are susceptible of common proof* equally applicable to all class members." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 334 (E.D. Mich. 2001) (emphasis added); *see also Williams v. Mohawk Indus.*, 2009 U.S. App. LEXIS 11391, at *15 (11th Cir. May 28, 2009) ("claims under RICO, in contrast with claims under Title VII, are often susceptible to common proof.") (citations omitted).  Applying these standards, the Court certified a much more diverse TPP class in *Carpenters*.

**B.**     **Plaintiff Satisfies the Rule 23(a) Requirements**

    **1.**     **The proposed California Public Payor Class meets the numerosity requirement because joinder of all members is impracticable.**

Numerosity is established if the size of a proposed class, even if inexactly determined, is sufficiently large as to make joinder impracticable given the relevant circumstances. *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 267 (D. Mass. 2004). Precise quantification of class members is not necessary; the Court may make common sense assumptions to support a finding of numerosity. *McCuin v. Secretary of Health & Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987). "[F]orty individuals [are] generally found to establish numerosity." *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 259 (D. Mass. 2005). Classes of twenty-two members or more are also appropriate under Rule 23. *Hopson v. Hanesbrands Inc*., 2009 U.S. Dist. LEXIS 33900, at *7 (N.D. Cal. Apr. 3, 2009) (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Ansari v. New York Univ*., 179 F.R.D. 112, 114 (S.D.N.Y. 1998); and *Wamboldt v. Safety-Kleen Sys*., 2007 U.S. Dist. LEXIS 65683, at *33 (N.D. Cal. Aug. 21, 2007)); *see also Philadelphia Elec. Co. v. Anaconda Am. Brass Co*., 43 F.R.D. 452, 463 (E.D. Pa. 1968) (finding twenty-five members to be sufficient). Moreover, "these are not rigid parameters, and the ultimate issue is whether the class is too large to make joinder practicable." *Ansari v. New York Un*iv., 179 F.R.D. 112, 114 (S.D.N.Y. 1998).

Plaintiff estimates that there are scores of Public Payors throughout the State of California, making individual joinder of all of these entities impractical, in satisfaction of Rule 23. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties. Additionally, because the City Attorney of the City and County of San Francisco is already statutorily empowered to bring false claim claims on behalf of the State and unfair competition claims on behalf of the People of California in this

proceeding (and does not rely on Rule 23 certification to do so), it would be more efficient and would conserve judicial resources to allow the Class claims to proceed at the same time. CAL. GOV'T CODE § 12652(B)(2); CAL. BUS. & PROF. CODE § 17206(A).

> **2.      The commonality requirement is met because questions of law and fact are common to all Class members.**

Generally, the commonality requirement is easily met, provided that at least one common question of law or fact exists. *In re Neurontin*, 244 F.R.D. at 105. The same common issues that warranted class treatment of the TPP and Consumer Co-pay claims in *Carpenters* are also present here, and they establish the existence of commonality required by Rule 23. These issues include, among others, "whether the WAC to AWP margin was increased as a result of an agreement between First DataBank and McKesson; whether this agreement was a RICO enterprise; and whether [McKesson] engaged in deceptive and/or fraudulent activity using the United States mails and interstate wire facilities." 244 F.R.D. at 84.

Other common issues of law and fact include:

> a.      Whether AWPs published by First Data are used as a contractual benchmark for payments by Third-Party Payors for drugs;

> b.      Whether McKesson and First DataBank caused the prices of the subject drugs to be sold to Class members at artificially high and noncompetitive levels;

> c.      Whether McKesson engaged in a course of conduct that improperly inflated the WAC-to-AWP markup and the ultimate AWPs or cash price used by Plaintiff and other members of the Class as the basis for reimbursement;

> d.      Whether McKesson engaged in a pattern of deceptive and/or fraudulent activity intended to defraud Plaintiff and other members of the Class;

> e.      Whether McKesson formed an enterprise with First DataBank for the purpose of carrying out the 5% scheme;

- 6 -

  f.  Whether McKesson used the U.S. mails and interstate wire facilities to carry out the 5% scheme;

  g.  Whether Plaintiff and other members of the Class were injured by McKesson's conduct, and if so, the appropriate measure of damages for Class members;

  h.  Whether Defendant's conduct violated the RICO statute; and

  i.  Whether McKesson intentionally interfered with Class Members' reimbursement contracts by artificially increasing the cost of such reimbursements.

**3.  Plaintiff meets the typicality requirement because their claims arise from the same course of conduct alleged by the Class.**

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Neurontin*., 244 F.R.D. at 106 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).  Like the TPP Class certified in *Carpenters*, Plaintiff and members of the proposed California Class reimbursed pharmacies for drugs dispensed to their plan members at a formula based on AWP (*e.g.*, AWP less a fixed percentage).  SAC, ¶ 4.  Plaintiff and each member of the proposed Class paid for the cost of one or more of the drugs identified in Exhibit A to the Second Amended Complaint.  *Id*. Accordingly, Plaintiff and Class members alike made excessive payments as a result of McKesson's scheme.  As in *Carpenters*, these common injuries satisfy the typicality requirement of Rule 23(a)(3).  *See* 244 F.R.D. at 84 ("A clear and distinct relationship exists between the injury to the named plaintiffs and the conduct affecting the two classes.  In other words, all members of the two classes, including the named plaintiffs, suffered harm resulting from the across the board 5% markup of drugs.").

>    **4.    Plaintiff meets the adequacy requirement because its interests will not conflict with those of other Class members and because it has chosen qualified, experienced counsel, who are capable of vigorously conducting the proposed litigation.**

The adequacy requirement has two parts:  (1) the moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and (2) that counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation.  *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).  Plaintiff and each member of the Class were similarly injured by McKesson's wrongful conduct in the form of overcharges for affected prescription drugs and thus all have a common interest in recovering these overcharges.  *Carpenters*, 244 F.R.D. at 84-85.[13]  Neither Plaintiff SFHP, nor its counsel have any interest adverse to those of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting nation-wide consumer class actions.  Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the proposed Class and have the financial resources to do so.

**C.    Plaintiff Meets the Requirement of Rules 23(b)(3)**

>    **1.    Common questions predominate over individual issues.**

The Rule 23(b)(3) predominance test does not require "that all issues be common to the class," *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 39 (1st Cir. 2003), but rather that the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *In re Neurontin*, 244 F.R.D. at 108.  McKesson engaged in a single scheme to defraud the public.  The Court's prior orders on certification of the TPP and Consumer Co-pay Classes in *Carpenters*

---

[13] Of course, should any putative class member disagree with participating in this class action, the appropriate remedy is not to deny certification, but for any such class member to opt-out of the class.  *See, e.g., In re Potash Antitrust Litig.*, 159 F.R.D. 682, 692 (D. Minn. 1995) ("[T]hose large-volume purchasers who do not wish to participate in the proposed class action are free to opt out of the class pursuant to the procedure set forth in Rule 23(c)(2).").

identify many of the numerous legal and factual issues common to SFHP and members of the proposed California Public Payors Class.

At the class certification stage the First Circuit does not require "hard factual proof but [rather] . . . a more thorough explanation of how the pivotal evidence behind plaintiff's theory can be established."  *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 29 (1st Cir. 2008).  Plaintiff meets this standard.  They have identified the sources that allow proof of impact based upon common proof.[14]  Plaintiff has further provided an assessment of the California Public Payor Class damages using data from CMS and IMS.[15]

> ### 2.    The grounds for limiting *Carpenters* class damages through 2003 are not present in the current litigation.

In *Carpenters*, the Court limited the TPP Class damages period to the end of 2003 to avoid the possibility of a multitude of mini-trials on whether individual TPPs knew about the markup increases and were able to renegotiate their contracts to clawback losses.  *New Eng. Carpenters Health Bens. Fund v. First Databank, Inc.*, 248 F.R.D. 363, 371-72 (D. Mass. 2008). There McKesson argued that TPPs could have renegotiated with their PBMs to implement a variety of contractual changes to eliminate the effect of the scheme and therefore individual issues of causation and mitigation of damages predominate.  *Carpenters*, 244 F.R.D. at 86.

However, as set forth in greater detail in Plaintiffs' Motion to Strike McKesson's Statute of Limitations and Mitigation Defenses, filed concurrently with this motion and incorporated by reference herein, Plaintiff and Class members were not required to mitigate because McKesson was in an equal position to prevent the harm from occurring and failed to do so.  *See, e.g.*, *Monex Int'l, Ltd. v. CFTC*, 83 F.3d 1130, 1135-36 (9th Cir. 1996); 22 AM JUR 2D DAMAGES § 354; D.

---

[14] Hartman Cal. Decl., ¶¶ 24-26; Proffer.

[15] *Id*. at ¶¶ 39-48.  As in *Carpenters*, Dr. Hartman's calculation relies on the TPP portion of the IMS data.  *Id*. at ¶ 44..

DOBBS, HANDBOOK ON THE LAW OF REMEDIES § 3.7 at 186 (1973) (reciting established rule that the injured party is not required to take steps to mitigate when the defendant has the same opportunity to prevent injury to the plaintiff and fails to do so). McKesson had at least an equal opportunity to prevent Plaintiff's losses by not engaging in the fraud or instructing its co-conspirator, First DataBank ("FDB"), to nullify its effects. Having intentionally engaged in a scheme to defraud Plaintiff and Class members' injuries, McKesson is not entitled to rely upon the mitigation defense as a matter of law.

Nor is McKesson entitled to collateral benefits Plaintiff and Class members may have received unrelated to McKesson's conduct or that of the pharmacies, who benefitted from its scheme, *e.g.*, cost reductions as a result of increased co-pays or increased rebates unrelated to AWPs. *See*, *e.g.*, *Larocca v. Borden, Inc*., 276 F.3d 22, 30 (1st Cir. 2002) (holding that the "'benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages.'") (quoting *Lussier v. Runyon*, 50 F.3d 1103, 1107 (1st Cir. 1995) (quoting 1 Dan B. Dobbs, Law of Remedies § 3.8(1), at 372-73 (2d ed. 1993)). A defendant is not entitled to an offset of damages from a collateral source because "a collateral source of recovery does not eliminate but just shifts the loss" caused by the defendant's misconduct. *United States v. Castellano*, 349 F.3d 483, 484 (7th Cir. 2003) (wire fraud). For example, if Plaintiff and Class members "had purchased insurance to protect themselves from fraud, *their receipt of indemnity would not have absolved the wrongdoers.*" *Id*. (emphasis added).

It is therefore unnecessary to limit the damages period to 2003 to avoid individual defenses because McKesson is not entitled to a mitigation defense as a matter of law, nor is it

entitled to a right of offset for any cost-saving devices unrelated to decreased reimbursement rates.

The Court's prior concerns about individual issues of causation and the risk of an overcalculation of damages have also been addressed. Whereas the contractual history of individual TPP class members' reimbursement contracts was unknown in *Carpenters*, historical state Medicaid reimbursement rates are publicly available. As set forth in Dr. Hartman's declaration, a review of these reimbursement rates indicates that there is a lack of a systematic push-back among state Medicaid Agencies generally, suggesting that any reductions in Medi-Cal's reimbursement rates were not made in response to the scheme.[16] Like most of the private sector entities in the *Carpenter Litigation*, the state Medicaid Agencies simply had no idea that the scheme had been effectuated.[17] Because the State of California would have revised its formulae as it did, in the absence of the scheme, the economic injury to the State's Medicaid agency in the form of inflated drug reimbursements occurred regardless of changes in the discount.[18]

And as for the remaining California Public Payors, there is no evidence of systematic pushback by these payors either. Based on his analysis of the IMS data in the *Carpenters* case, Dr. Hartman found no evidence of pushback by private or public TPPs through March 2005, nor is there any evidence of TPP pushback after 2005.[19] Plaintiff's damages calculation is based on a conservative interpretation of the data that does not take into account the downward trend in

---

[16] Hartman Cal. Decl., ¶ 22 (g) and Attach. D, Chart 1.

[17] *Id.* at ¶ 22 (g).

[18] *Id.*

[19] *Id.* at ¶ 22 (d) and (f).

reimbursement rates that continued to occur before, during and after the scheme.[20]  Damages are calculated based on the difference between the Plaintiff's actual costs and the pre-scheme but-for reimbursement rate for the Appendix A drugs.[21]  The calculation of damages is based on IMS aggregate pricing information, which necessarily includes any changes in reimbursement amounts stemming from changes in Class members' reimbursement formulas.  Thus, any alleged pushback inherent to the changes to reimbursement rates would necessarily be included in the damages calculation.[22]

### 3.    Class treatment is superior to other forms of litigation.

Rule 23(b)(3) also requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy," Fed. R. Civ. P. 23(b)(3), to ensure  "that resolution by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 346 (D. Mass. 2003) (quoting *Amchem*, 521 U.S. at 615).

As set forth in the accompanying declaration of Dr. Hartman:  "Detailed statistical analysis of reimbursement data for the challenged drugs demonstrates that the impact and injury of the Scheme upon all members of the Class reimbursing on the basis of the AWPs for those NDCs was immediate and lasting."[23]  Since the Classes include only those payors whose reimbursement rates were determined by AWPs and the Scheme increased those AWPs, the

---

[20] *Id*. at ¶¶ 21, 22(e), 43-45 and n.74.

[21] *Id* at ¶ 45 and n.74.

[22] *See id*. at Attach. C (8.15.08 Expert Report of Raymond S. Hartman Refined Calculation of Damages, ¶ 8(b)).

[23] Hartman Cal. Decl., ¶ 23.

impact was uniform across Class members.[24]  Class-wide analysis is feasible and the most

effective way of demonstrating impact, corroborating liability and measuring damages.[25]  As

previously established in the *Carpenters' Litigation*, existing data sources and analytic methods

can be used to demonstrate that McKesson's conduct and conspiracy led to class-wide economic

impact and injury to the members of the Class at issue here.[26]  Dr. Hartman has provided a

damages calculation for the proposed Class, estimated at around a half billion dollars in

damages.[27]

Class certification in this case would certainly be far superior to any other procedure

available for the treatment of the common factual and legal issues raised by Plaintiff's claims.

Like the TPP class certified in *Carpenters*, the proposed California Class contains many Public

Payors located throughout the State.  Because the same facts and evidence can and must be used

as proof for each member of the Class, "[s]eparate proceedings would produce duplicate efforts,

unnecessarily increase the costs of litigation, impose an unwarranted burden on this Court and

other courts throughout the country, and create the risk of inconsistent results for similarly

situated parties."  *In re Potash*, 159 F.R.D. at 699.

Additionally, if the Court were to deny class certification, many Class members would

likely be foreclosed from pursuing individual claims against McKesson due to the extensive

costs involved.  *See In re Potash*, 159 F.R.D. at 699 ("[T]he cost associated with individual

claims may require claimants with potentially small claim amounts to abandon otherwise valid

---

[24] *Id*. at ¶ 25(c) and (d).

[25] *Id*. at ¶ 26.

[26] *Id*. at ¶ 26(e).

[27] *Id*. at ¶¶ 27-48, Table 1.

claims simply because pursuing those claims would not be economical.").  Accordingly, Plaintiff

has satisfied the superiority requirement of Rule 23(b)(3).

### 4. Class damages can be easily calculated.

"[W]here damages can be computed according to some formula, statistical analysis, or

other easy or essentially mechanical methods, the fact that damages must be calculated on an

individual basis is no impediment to class certification."  *In re Pharm. Indus. Average Wholesale

Price Litig.*, 230 F.R.D. 61, 86 (D. Mass. 2005).  As in *Carpenters*, Dr. Hartman has calculated

aggregate damages for the Non-Medicaid California Class members using industry-wide data

available from IMS.[28]  *See Carpenters*, 248 F.R.D. at 371 ("After a rigorous review of the expert

analysis for purposes of class certification, Plaintiff has demonstrated that the IMS data is a

reasonable proxy for what TPPs paid at retail during the redefined class period.").  Additionally,

Dr. Hartman has calculated damages for California's Medicaid Program, using publicly available

CMS data.[29]

If the Court certifies the Class, allocation of the award will be made administratively

upon the submission of claims, according to a Court-approved formula.  *See* Plaintiff's Proposed

Trial Plan, filed concurrently with this motion.

### 5. State law issues are manageable and create common issues.

Under the Restatement rules for tort claims, the key factors are:  (1) the place where the

injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicil,

residence, nationality, place of incorporation, and place of business of the parties; and (4) the

place where the relationship, if any, between the parties is centered.  RESTATEMENT (SECOND)

CONFLICT OF LAWS § 145(2).  California law indisputably applies to SFHP and the proposed

---

[28] Hartman Cal. Decl., ¶¶ 42-48 and Attach. E.

[29] Hartman Cal. Decl., ¶¶ 27-41 and Attach. E.

Class' state law claim for tortious interference with the performance of a contract because McKesson is a California corporation, the fraudulent conduct occurred in the State of California, Plaintiff and members of the proposed Class are all California residents and were injured in the State of California.

To prevail on its tortious interference claim Plaintiff must prove that (1) it and members of the proposed Class had valid reimbursement contracts with pharmacies based on AWP, (2) McKesson was aware of this contractual relationship, (3) McKesson acted intentionally to increase AWPs, and (4) in so doing, McKesson increased the costs of performance under these contracts, thereby causing injury to Plaintiff and members of the Class.  *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 458 n.4 (Cal. 1994); *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 592 (Cal. 1990).

By raising AWPs, McKesson acted with intent to increase the costs of the California Public Payors' performance under their reimbursement contracts.  Given the use of AWP as a benchmark for prescription drug reimbursements, each of the above elements will be proven with evidence common to each member of the proposed Class.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff SFHP requests that the Court grant its motion to certify a class of California Public Payors to resolve federal RICO and California tortious interference claims.

DATED:  July 1, 2009            By_____s/ Steve W. Berman_____
                                    Steve W. Berman
                                    Sean R. Matt
                                    Barbara A. Mahoney
                                HAGENS BERMAN SOBOL SHAPIRO LLP
                                1301 Fifth Avenue, Suite 2900
                                Seattle, WA  98101
                                Telephone: (206) 623-7292
                                Facsimile: (206) 623-0594

                                Jeff Friedman
                                HAGENS BERMAN SOBOL SHAPIRO LLP
                                715 Hearst Avenue, Suite 202
                                Berkeley, CA  94710
                                Telephone:  (510) 725-3000
                                Facsimile:  (510) 725-3001

                                *Attorneys for the San Francisco Health Plan*

                                Dennis J. Herrera
                                City Attorney
                                Danny Chou (California Bar No. 180240)
                                Chief of Complex and Special Litigation
                                Owen Clements (California Bar No. 141805)
                                Chief of Special Litigation
                                Alex Tse
                                Erik Rapoport (California Bar No. 187059)
                                Deputy City Attorneys
                                OFFICE OF THE SAN FRANCISCO CITY
                                ATTORNEY
                                1390 Market Street, 7th Floor
                                San Francisco, CA  94102
                                Telephone:  (415) 554-3900
                                Facsimile:  (415) 554-3985

                                *Attorneys for the San Francisco Health Plan and the
                                People of the State of California*

                                Louise H. Renne (pro hac to be filed)
                                Jonathan V. Holtzman (pro hac to be filed)
                                Allyson S. Hauck
                                RENNE SLOAN HOLTZMAN SAKAI LLP
                                350 Sansome Street, Suite 300
                                San Francisco, CA  94104
                                Telephone:  (415) 678-3800
                                Facsimile:   (415) 678-3838

                                *Attorneys for the San Francisco Health Plan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on July 1, 2009.


s/ Steve W. Berman_____
Steve W. Berman

001821-16  310674 V1