UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE MCKESSON GOVERNMENTAL ENTITIES AVERAGE WHOLESALE PRICE LITIGATION | Master File No.: 1:08-CV-10843-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>All Actions:<br>*San Francisco Health Plan v. McKesson Corp.*; | No. 1:08-CV-10843-PBS |
| *Connecticut v. McKesson Corp.*; | No. 1:08-CV-10900-PBS |
| *The Board of County Commissioners of Douglas County, Kansas, et al. v. McKesson Corp.* | No. 1:08-CV-11349-PBS |

**McKESSON'S EMERGENCY MOTION FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS**

McKesson seeks leave on an expedited basis to take additional depositions in this consolidated proceeding of three actions, two of which are purported class actions. Plaintiffs seek damages on behalf of every city, county and state in the country for alleged overpayments by Medicaid programs, local workers compensation programs, prisons, poverty programs, and municipal and state employee health benefit programs. Together there are ten named plaintiffs, each of whom has its own PBM and often employs a separate benefit consultant or a fiscal intermediary to manage the programs about which plaintiffs sue. Furthermore, many of the named plaintiffs are suing on behalf of multiple prescription drug programs, and those disparate programs are often operated by different agencies.

To date McKesson has taken 23 depositions—15 of the named plaintiffs and their representatives, and 8 of third-party witnesses. Plaintiffs do not dispute that McKesson, by the

rules, is entitled to take at least 30.  Plaintiffs do not dispute that McKesson, by the rules, is entitled to take at least 30.  McKesson has identified 10 more depositions that it needs, beyond the 30 plaintiffs concede McKesson may take.  McKesson also seeks leave to take two additional "clean-up" depositions, in light of the fact that plaintiffs are still producing documents months after the deadlines ordered by Magistrate Dein.  In response to McKesson's efforts to schedule these additional depositions, plaintiffs have insisted that they will not attend more than 30 depositions, and have further refused to even commit to deposition dates for named-plaintiff Oklahoma unless the Court orders them to do so.

McKesson makes this motion on an emergency basis because there are just six weeks remaining in the fact discovery period, and plaintiffs have only now indicated their intention to participate in no more than 30 depositions without an order from the Court.  (Letter from Barbara Mahoney to Paul Flum (Jan. 8, 2010).)  According to plaintiffs' count, their limit of 30 depositions will be reached by January 21, and thus this motion cannot be briefed and resolved on the ordinary schedule.

## FACTUAL BACKGROUND

This litigation began as nine separate actions, presumptively entitling McKesson to 90 depositions.  Six of those cases were later rolled into the *Douglas County* action, which was then consolidated with the *Connecticut* and *San Francisco Health Plan* actions under the above caption.  The consolidated cases thus consist of:

- *Douglas County*, in which eight named plaintiffs seek to represent a nationwide class of cities, counties, and every state except California and Connecticut;

- *San Francisco Health Plan*, in which the City is suing on behalf of SFHP and the state of California, and also seeks to represent a class of every city and county in California; and

- *Connecticut*, in which the state is separately suing on behalf of three programs administered by its Medicaid agency.

In the parties' joint scheduling statement, McKesson indicated that it would need 60 depositions, while plaintiffs insisted on a limit of 25.  (*See* Joint Sch. Stmt. Pursuant to L.R. 16.1(D) [*SFHP* Docket No. 29] (Feb. 11, 2009).)  The Court did not resolve that dispute at the ensuing scheduling hearing, although Judge Saris recognized that McKesson would need to take "the classic depositions of everyone" in order to defend itself.  (Hr'g. Tr. at 23:18-23 (Feb. 12, 2009).)  Specifically, Judge Saris recognized that McKesson would need full discovery as to "issues regarding Public Payor entities, programs, knowledge, and damages."  (CMO No. 2, ¶ 3 [*SFHP* Docket No. 81] (Mar. 11, 2009).)  CMO No. 2 also anticipated that McKesson would need full discovery from all of the PBMs used by the named plaintiffs.[1]  (*Id.* ¶ 7.)

The 23 depositions that McKesson has taken to date have all directly concerned "Public Payor entities, programs, knowledge, and damages," and McKesson has been very efficient in its examinations—roughly half of the depositions have concluded in less than half a day.  Thus far, McKesson has taken eight Rule 30(b)(6) depositions of the plaintiffs, seven depositions of other plaintiff-related representatives, and three depositions of the plaintiffs' PBMs and claims administrators.  The other five depositions have been of third parties:  two manufacturers (Baxter and Genzyme), the fiscal intermediary for Delaware's Medicaid program (EDS), Argus Health Systems, and Missouri's Medicaid director.

In the six weeks remaining in the discovery period, McKesson still needs to:

- complete its discovery from the named-plaintiffs Connecticut, California, and Baltimore;

- depose the PBM used by named plaintiff Columbia, S.C.; and

- depose named plaintiffs Oklahoma and Montana, of whom no depositions have yet been taken.

---

[1] State Medicaid agencies typically use "fiscal intermediaries" to manage their reimbursement programs rather than PBMs per se, and several of the other named plaintiffs retain benefit consultants to evaluate the work of their PBMs.

All together, McKesson has identified just ten more than the 30 witnesses at which plaintiffs draw the line, with an additional two reserved for clean up.

## ARGUMENT

The additional depositions McKesson seeks are warranted and necessary in these consolidated cases.  As noted, this litigation began as a series of nine separate actions, which would have presumptively entitled McKesson to 90 depositions under the federal and local rules. The fact that those nine cases have been condensed to three actions does not simplify the facts of the litigation, nor in any other way does it narrow the scope of the discovery that McKesson needs to take to oppose the certification of the two class actions, and to defend against the merits of each of the individual plaintiffs' claims.  While McKesson admittedly does not need 90 depositions, it certainly needs more than the 30 that plaintiffs insist on, which would not even permit McKesson to complete its discovery of the named plaintiffs.  *See* 7 Moore's Federal Practice - Civil § 30.05 ("It would seem unfair that a plaintiff could avoid having his or her deposition taken simply by banding together with a number of other plaintiffs.").  Notably, where the drug manufacturers faced similar claims from multiple government entities in the MDL, no strict limits were placed on the number of depositions the defendants could take.

## I.     THE DEPOSITIONS MCKESSON SEEKS ARE TARGETED, AND THE RULES REQUIRE THAT THEY BE PERMITTED.

Even assuming that 30 depositions is the appropriate default number in light of the realignment of the plaintiffs, the Federal Rules of Civil Procedure provide that "the court must grant leave" to take more than 10 depositions per case where doing so is "consistent with Rule 26(b)(2)."  Fed. R. Civ. P. 30(a)(2).  Rule 26(b)(2), in turn, provides that additional depositions should be restricted only in three situations:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii); *see* 7 Moore's Federal Practice – Civil § 30.05 ("In determining whether to grant additional depositions, the court must apply the principles set forth in Rule 26(b)(2)(C)").  As described with specificity below, none of the additional depositions that McKesson has proposed contravenes the discovery limitations in Rule 26(b)(2)(C).

First, none of the remaining depositions McKesson seeks is duplicative or cumulative, given the array of plaintiffs in this action and the diversity of the programs for which they claim damages.  Furthermore, there is no alternative to the deposition testimony that McKesson seeks from these witnesses—most or all of them are beyond the Court's subpoena power, so McKesson must secure admissible testimony through deposition.

Second, McKesson has not previously had the opportunity to discover the information sought through these depositions, since the evidence developed in *New England Carpenters* concerned only private plans, which are different from the publicly-sponsored programs at issue in this litigation.

Third, the burden and expense of convening these additional depositions pales in comparison to the more than $1 billion dollars that the classes are seeking in damages, and given the fact that the plaintiffs are represented by six different law firms with offices spread across the country, the burden they face from appearing to defend these depositions is not unreasonable.

McKesson has identified the following depositions that must be taken before the close of discovery, for the reasons specified.  Plaintiffs concede that seven of these are already permitted by the rules.

**Plaintiffs and Their Representatives**

- **Oklahoma**: McKesson intends to take two depositions—one under Rule 30(b)(6), and one of Lynn Mitchell, the long-time director of Oklahoma Medicaid who, among

other things, took notes during a CMS-hosted conference call in February 2003 querying "Why AWP inflated; what to do about it."

- **Montana**:  McKesson intends to take one Rule 30(b)(6) deposition and the deposition of one state employee, Jeff Buska, who was actively involved in analyzing Montana's expenditures for brand drugs and setting and changing reimbursement rates in the relevant time period.

- **Connecticut**:  McKesson intends to depose former employees David Parrella and Marc Ryan, and two current employees, Marcia Mains and Lee Voghel. Connecticut's Rule 26 initial disclosures identified Ms. Mains, Mr. Voghel, and Mr. Parrella as people "known to be likely to have information that Plaintiff may use to support its claims," and its 30(b)(6) witness repeatedly referred to these witnesses as having knowledge superior to her own.  Mr. Ryan previously oversaw the state's Medicaid budget, and was described by the Commissioner of Connecticut's Department of Social Services as a person who "was very familiar with Medicaid, and [ ] took a keen interest in Medicaid."  (Dep. of Michael Starkowski at 40:12-21 (Dec. 7, 2009).)  Mr. Ryan was also privy to Connecticut's conclusion in November 2002 that brand drugs had a 20% AWP-to-WAC "spread" (i.e., that they were subject to the 25% WAC-to-AWP markup that is the basis of this litigation).

- **Michael Cole**:  Mr. Cole is a member of the Connecticut Attorney General's office. A document belatedly produced by Connecticut shows that Mr. Cole met with Mark Redman, an in-house attorney for FDB, in March 2004 to discuss First Databank's AWP methodology.[2]

---

[2] Connecticut had originally listed the document, which is plainly a non-privileged communication, on its privilege log, and only produced it just before the holidays, upon McKesson's insistence.

- **Ellen Arce**:  Ms. Arce is a long-time employee of EDS, which acts as the fiscal intermediary for named plaintiff Connecticut's Medicaid program.  EDS employees in other states learned as early as November 2002 that Red Book's published AWPs were often lower than FDB's.  Among other issues, McKesson needs to depose Ms. Arce to determine whether this information was shared with her.

- **California/SFHP**:  McKesson intends to take two additional California Department of Health Care Services depositions, one from a Rule 30(b)(6) witness concerning details about California's reimbursement programs that the two witnesses deposed thus far were unable to provide, and one from Douglas Hillblom, who, according to testimony from the Pharmacy Section Chief of California Medicaid, specifically advised him of FDB's markup increases early in 2004.

- **Tom Temmerman**:  Mr. Temmerman was the head of the California Attorney General's Medicaid fraud unit, and sought intervention for California in a suit by the drug manufacturer Dey against FDB, in which Dey sought redress for FDB's decision to set Dey's WAC-to-AWP markup at 25% in 2003, against Dey's wishes.

- **Aon Consulting, Inc.**:  Aon has served as Baltimore's benefit consultant since the 1990s.  McKesson needs to depose Aon to fill in critical gaps in the testimony of Baltimore's Rule 30(b)(6) designee, who did not join the City until 2006 and had limited knowledge of Baltimore's prescription drug programs before that time.

- **Evergreen Rx**:  Evergreen Rx is SFHP's benefit consultant who, like Aon, McKesson must depose as a substitute for SFHP's 30(b)(6) designees, who lacked substantive knowledge about many aspects of SFHP's reimbursement methodology and design changes.

**Third Parties**

- **Mark Richard Butt**:  Mr. Butt is an employee of New York Medicaid, and was a participant on the February 2003 CMS-hosted conference call noted above.  Along with a CMS employee, he was apparently the presenter of the topic that prompted Ms.

Mitchell's notes querying why FDB's AWPs were inflated, and how payors could respond.

- **CVS Caremark**:  Caremark was the PBM for named plaintiff Columbia, S.C. McKesson intends to depose Caremark about why it has recontracted with its TPP clients and its retail network to neutralize the impact from the FDB settlement and rollback.

Pursuant to the deposition scheduling provisions set forth in CMO No. 2, McKesson has attempted to coordinate with plaintiffs' counsel to schedule most of the depositions described above.  It was McKesson's attempted scheduling that prompted plaintiffs' January 8 letter insisting that they would not participate in depositions after January 21.

## II.    PLAINTIFFS' OPPOSITION TO THE DEVELOPMENT OF ADDITIONAL EVIDENCE.

A partial review of the deposition testimony that has already been developed indicates why plaintiffs staunchly oppose any further depositions.  Some of that evidence includes:

- **Baxter and Genzyme**:  McKesson's depositions of these two drug manufacturers confirmed that they sent letters to all 50 Medicaid agencies in 2002, which among other things described the impropriety of FDB's markup changes, and detailed the absence of the "survey" that FDB claimed to be conducting.

- **California Department of Health Care Services**:   McKesson deposed two employees of California's Medicaid agency, who testified that, by the first part of 2004, California had specific knowledge that FDB had changed almost all of its markups from 20% to 25%.

- **EDS**:  As noted above, McKesson deposed an employee of EDS' Delaware Medicaid account to confirm that personnel in Delaware knew about the 5% AWP differences between FDB and Red Book as of November 2002, switched Delaware's source of AWP to Red Book, and shared that information with other Medicaid administrators.

- **George Oestreich**:  McKesson deposed the state of Missouri's Medicaid director, who administered an email listserv that shared information among the 50 Medicaid administrators.  Among the information shared was the fact that the WAC-to-AWP spread had increased to a uniform 25% by 2004.

## III.     THE NEED FOR MANY OF THE ADDITIONAL DEPOSITIONS ARISES FROM PLAINTIFFS' CONDUCT.

All together, the completed and anticipated depositions total 40, and McKesson also seeks two unallocated depositions for any clean-up that may be necessary.  Plaintiffs can hardly complain about the additional 12 depositions McKesson seeks, because many of them have been necessitated by plaintiffs' own conduct.

Several depositions have been necessitated by the fact that many of the Rule 30(b)(6) witnesses produced by plaintiffs have been unprepared to testify even on fundamental topics.  The 30(b)(6) witness produced by Goldsboro, for example, had only been on the job since August 2008, testified that she did not even know what the acronyms WAC and AWP stood for until the day before her deposition, and had no knowledge of Goldsboro's drug benefit during the relevant time period.  At plaintiffs' counsel's suggestion, McKesson deposed Goldsboro's benefit consultant to learn more.  The 30(b)(6) witness offered by Baltimore was similar, only having been on the job since July 2006, and lacking knowledge about its drug benefits during the relevant time period.  McKesson was forced to depose an additional City employee and Baltimore's outside benefit consultant to fill in these gaps.

Plaintiffs' conduct also necessitates the reservation of the two unallocated depositions McKesson requests.  Oklahoma, for example, produced almost 660,000 pages of email and attachments just last week, which documents McKesson must review before deciding whether it needs more than the two Oklahoma depositions currently contemplated.  The Court will recall that after McKesson brought a motion to compel, Magistrate Dein ordered Oklahoma to complete its production by June 30, 2009.  (Supplemental Order on McKesson Corporation's Motion to Compel Production of Documents [*SFHP* Docket No. 54] (June 18, 2009).)  Up until

last week, Oklahoma had produced just 17,674 pages.  Its last-minute, 37-fold increase in the volume of its production comes six months after the court-ordered deadline, and just six weeks before the close of discovery.  Connecticut and SFHP are in the process of supplementing their productions.

The need for the two unallocated depositions is also highlighted by McKesson's experience with the depositions that have taken place thus far.  For example, McKesson decided to depose Lee Voghel after Commissioner Starkowski of the Connecticut Department of Social Services identified him as one of the employees with expertise on drug reimbursement, whose "role always included some input on rate setting."  (Starkowski Dep. at 33:8-10.)  McKesson believes it is reasonable for the Court to provide a cushion of two depositions to avoid the need for further motion practice as additional important witnesses are identified.  *Cf. Whittingham v. Amherst College*, 163 F.R.D. 170, 171 (D. Mass. 1995) (requiring the party seeking leave to identify by name every additional deponent).

## CONCLUSION

For the foregoing reasons, McKesson seeks an order from the Court that it be permitted to take twelve depositions beyond the 30 deposition limit that plaintiffs contend applies to these cases, to be completed before the current non-expert discovery cut-off of February 19, 2010.  Because plaintiffs are refusing to participate in any depositions after January 21, McKesson respectfully requests that the Court rule on this motion before that date.

McKesson Corporation
By its attorneys:

/s/ Lori A. Schechter
Melvin R. Goldman (*pro hac vice*)            Robert S. Frank, Jr.
Lori A. Schechter (*pro hac vice*)             R.J. Cinquegrana
Paul Flum (*pro hac vice*)                        Joseph H. Zwicker
Morrison & Foerster LLP                         Choate, Hall & Stewart LLP
425 Market Street                               Two International Place
San Francisco, CA 94105-2482                    Boston, MA 02110
Email: LSchechter@mofo.com                      Telephone:  (617) 248-5000
Telephone: (415) 268-7000                       Facsimile:  (617) 502-4000
Facsimile: (415) 268-7522

Dated:  January 11, 2010

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that counsel for McKesson conferred with counsel for plaintiffs, who do not consent to the relief sought by this motion.

/s/ Lori A. Schechter
Lori A. Schechter


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on January 11, 2010.

/s/ Lori A. Schechter
Lori Schechter