UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE MCKESSON GOVERNMENTAL ENTITIES AVERAGE WHOLESALE PRICE LITIGATION | Master File No.: 1:08-CV-10843-PBS |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: | |
| *Connecticut*, No. 1:08-CV-10900-PBS | |

**STATE OF CONNECTICUT'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ........................................................................................................1

II.  ARGUMENT ............................................................................................................1

    A.  A Fraud Victim does not Have a Duty to Mitigate Until it has
        Actual Knowledge of the Fraud. ............................................................................2

    B.  There is no Evidence of Actual Knowledge of the Fraud Until Sometime
        After the FDB Settlement Announcement in October 2006. ...............................11

    C.  McKesson has Pointed to Nothing in the Record to Show that Connecticut
        Acted Recklessly or with Intent to Injure Itself by Maintaining its
        Reimbursement Rate to Benefit from the Rollback. ...........................................12

    D.  McKesson Could Easily have Negated the Harm to the State by Publicly
        Acknowledging its Scheme, Thereby Providing the Necessary Transparency
        for the State to Enact an Adjusted Reimbursement Rate. ....................................15

III.  CONCLUSION ........................................................................................................17

010010-13  362378 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aetna Cas. & Sur. Co. v. Dini,*
821 P.2d 216 (Ariz. Ct. App. 1991)......................................................................8

*Aetna Cas. Sur. Co. v. P & B Autobody,*
43 F.3d 1546 (1st Cir. 1994)................................................................................7

*Allied Int'l v. International Longshoremen's Ass'n,*
814 F.2d 32 (1st Cir. 1987)................................................................................13

*Ameristar Jet Charter v. Signal Composites, Inc.,*
2002 U.S. Dist. LEXIS 7670 (N.D. Tex. Apr. 30, 2002) .........................................4

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.,*
618 F. Supp. 2d 280 (S.D.N.Y. 2009)................................................................13

*Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.,*
771 F.2d 5 (1st Cir. 1985)...................................................................................3

*Cambridge Plating Co. v. NAPCO,*
876 F. Supp. 326 (D. Mass. 1995), *reversed and vacated in part,*
85 F.3d 752 (1st Cir. 1996)................................................................................8

*Chiang v. Verizon New Eng., Inc.,*
595 F.3d 26 (1st Cir. 2010).................................................................................2

*China Trust Bank of N.Y. v. Standard Chtd.,*
1998 U.S. Dist. LEXIS 13945 (S.D.N.Y. Sept. 3, 1998)........................................6

*Computer Sys. of Am., Inc. v. Data Gen. Corp.,*
921 F.2d 386 (1st Cir. 1990)..............................................................................15

*Conetta v. Nat'l Hair Care Ctrs., Inc.,*
236 F.3d 67 (1st Cir. 2001).................................................................................1

*Continental Group, Inc. v. Lincoln Land Moving & Storage, Inc.,*
710 F.2d 368 (7th Cir. 1983) ..............................................................................9

*Cooney Indus. Trucks, Inc. v. Toyota Motor Sales, U.S.A., Inc.,*
168 F.3d 545 (1st Cir. 1999)...............................................................................2

*Culebra II, LLC v. River Cruises & Anticipation Yachts, LLC,*
564 F. Supp. 2d 70 (D. Me. 2008) .....................................................................13

*FDIC v. Flagship Auto Ctr., Inc.,*
   2006 U.S. Dist. LEXIS 67876 (N.D. Ohio Sept. 21, 2006)......................................................4

*Federal Ins. Co. v. Sabine Towing & Transp. Co. Inc.,*
   783 F.2d 347 (2d Cir. 1986)...................................................................................................13

*Fleet Nat'l Bank v. Anchor Media Television, Inc.,*
   45 F.3d 546 (1st Cir. 1995)...............................................................................................2, 15

*GE Capital Corp. v. Nucor Drilling, Inc.,*
   551 F. Supp. 2d 1375 (M.D. Ga. 2008) ...................................................................................4

*Greyhound Fin. Corp. v. Willyard,*
   1989 U.S. Dist. LEXIS 16040 (D. Utah Dec. 23, 1989).................................................4, 8, 11

*Harding v. Cianbro Corp.,*
   498 F. Supp. 2d 344 (D. Me. 2007) ....................................................................................8, 9

*Hernandez v. Balakian,*
   2007 U.S. Dist. LEXIS 43680 (E.D. Cal. June 1, 2007).....................................................2, 3

*In re Pharm. Indus. Average Wholesale Price Litig.,*
   252 F.R.D. 83 (D. Mass. 2008)................................................................................................7

*Katz v. First of Mich.,*
   1989 U.S. Dist. LEXIS 19141 (W.D. Mich. Mar. 13, 1989) ...............................................3, 6

*Kratze v. Independent Order of Oddfellows,*
   500 N.W.2d 115 (Mich. 1993)...............................................................................................11

*Kurke v. Oscar Gruss & Son, Inc.,*
   454 F.3d 350 (D.C. Cir. 2006) ..............................................................................................13

*Lone Mt. Processing, Inc. v. Bowser-Morner, Inc.,*
   2005 U.S. Dist. LEXIS 16340 (W.D. Va. Aug. 10, 2005) .....................................................10

*Lopez v. Aran,*
   894 F.2d 16 (1st Cir. 1990).....................................................................................................2

*Marin v. Evans,*
   2007 U.S. Dist. LEXIS 13492 (E.D. Wash. Feb. 27, 2007) ...................................................3

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Millar,*
   274 F. Supp. 2d 701 (W.D. Pa. 2003)................................................................................9, 10

*Monex Int'l, Ltd. v. CFTC,*
   83 F.3d 1130 (9th Cir. 1996) ...........................................................................................16, 17

- iii -

*Morgan, Olmstead, Kennedy & Gardner, Inc. v. Schipa*,
  585 F. Supp. 245 (S.D.N.Y. 1984).............................................................3, 5, 6, 8

*Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*,
  582 F.3d 30 (1st Cir. 2009)......................................................................9, 11, 12

*Peck Iron & Metal Co. v. United States*,
  603 F.2d 171 (Cl. Ct. 1979) ...............................................................................10

*Persson v. Scotia Prince Cruises, Ltd.*,
  330 F.3d 28 (1st Cir. 2003).....................................................................................2

*Rodriguez-Torres v. Caribbean Forms Mfr., Inc.*,
  399 F.3d 52 (1st Cir. 2005).................................................................................8, 9

*S.C. Johnson & Son, Inc. v. Morris*,
  779 N.W.2d 19, 2009 Wisc. App. LEXIS 923 (Wis. Ct. App. Dec. 2, 2009) ......................4, 6

*S. Cal. Fed. S&L Ass'n v. United States*,
  422 F.3d 1319 (Fed. Cir. 2005)............................................................................16

*S. Cal. Fed. S&L Ass'n v. United States*,
  57 Fed. Cl. 598 (2003), *aff'd in part, rev'd in part on other grounds, & remanded*,
  422 F.3d 1319 (Fed. Cir. 2005)............................................................................16

*Sanford Inst. for Sav. v. Gallo*,
  156 F.3d 71 (1st Cir. 1998).....................................................................................7

*Security Nat'l Bank v. Recreational Dimensions, Inc.*,
  1991 Mass. App. Div. 21 (1991)..........................................................................10

*Spedag Americas, Inc. v. Petters Hospitality & Entm't Group LLC*,
  2008 U.S. Dist. LEXIS 62911 (S.D. Fla. Aug. 18, 2008).....................................9

*Tauber v. City of Chicago*,
  1997 U.S. Dist. LEXIS 7332 (N.D. Ill. May 16, 1997)..........................................9

*Travelers Indem. Co. v. Maho Machine Tool Corp.*,
  952 F.2d 26 (2d Cir. 1991)...................................................................................16

*Union Planters Bank, N.A. v. Cont'l Cas. Co.*,
  478 F.3d 759 (6th Cir. 2007) ...........................................................................6, 10

*United States ex rel. Dye v. ATK Launch Sys.*,
  2008 U.S. Dist. LEXIS 85331 (D. Utah Oct. 16, 2008) ........................................4

*United States ex rel. Jordan v. Northrop Grumman Corp.*,
  2002 U.S. Dist. LEXIS 26622 (C.D. Cal. Aug. 5, 2002)........................................4

010010-13 362378 V1

*United States ex rel. Monahan v. Robert Wood Johnson Univ. Hosp.*,
   2009 U.S. Dist. LEXIS 111347 (D.N.J. Dec. 1, 2009) .............................................4

*Veranda Beach Club Ltd. P'ship v. Western Sur. Co.*,
   936 F.2d 1364 (1st Cir. 1991) ...............................................................................13

*Wartzman v. Hightower Productions., Ltd.*,
   456 A.2d 82 (Md. Ct. App. 1983) ..........................................................................16

*Willever v. Sovereign Bank*,
   1998 Pa. Dist. & Cnty. Dec. LEXIS .......................................................................10

### OTHER AUTHORITIES

DOBBS, HANDBOOK ON THE LAW OF REMEDIES § 3.7 (1973) ....................................................16

RESTATEMENT (SECOND) OF TORTS § 918 ....................................................................8

# I.    INTRODUCTION

McKesson concedes that it is not entitled to a statute of limitations or mitigation defense to the State of Connecticut's Connecticut Unfair Trade Practices claims.  The only remaining issue in dispute is whether McKesson is entitled to raise mitigation of damages as a defense to Connecticut's RICO claims.

As a matter of law, Connecticut had no duty to mitigate until it became aware of the fraud sometime after the October 2006 when FDB announced that it had settled with the plaintiffs in the underlying *New England Carpenters* litigation and that as part of its settlement it would first reverse the AWP markups that were the subject of the lawsuit to their pre-scheme ratios and then cease publishing AWPs altogether.  McKesson has pointed to nothing in the record to show that the State intentionally or recklessly failed to protect its interests when it maintained its AWP-based reimbursement rate after the FDB announcement of the AWP rollback.  The record is undisputed that the State believed the rollback would result in a savings of roughly $21 million per year if it maintained its current reimbursement rate.[1]  If the State had moved to a different benchmark it would have lost that valuable benefit entirely.  The State is therefore entitled to summary judgment on McKesson's mitigation defense.

# II.    ARGUMENT

McKesson bears the burden of proving its mitigation defense.  *Conetta v. Nat'l Hair Care Ctrs., Inc.*, 236 F.3d 67, 77 (1st Cir. 2001).  To defeat summary judgment, McKesson "'must do more than simply show that there is some metaphysical doubt as to the material facts,'" it must

---

[1] Declaration of Steve Berman in Support of the State of Connecticut's Motion for Summary Judgment ("Berman Decl."), Ex. 6 (Starkowski Dep. at 151:16-153:3 (discussing the anticipated savings from the rollback)).  *See also* Steve Berman's Supplemental Declaration in Support of the State's Motion for Summary Judgment ("Berman Suppl. Decl."), Ex. 1 (February 10, 2010 Deposition of Ellen Arce at 77:7-78:5).

"show specific facts that present a genuine issue worthy of trial." *Chiang v. Verizon New Eng., Inc.*, 595 F.3d 26, 34 (1st Cir. 2010) (quoting *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). McKesson has failed to muster any evidence that Connecticut knew of the scheme before the FDB settlement announcement, nor does it point to any evidence that the State acted recklessly or with the intent to harm itself when it opted to maintain its reimbursement rate and reap the benefits of a projected $21 million annual savings from the FDB rollback. Connecticut is therefore entitled to summary judgment on this defense.

**A.     A Fraud Victim does not Have a Duty to Mitigate Until it has Actual Knowledge of the Fraud.**

McKesson extravagantly overstates the State's duty to mitigate. First, the duty is not absolute and does not arise under all circumstances.[2] *See, e.g., Persson v. Scotia Prince Cruises, Ltd.*, 330 F.3d 28 (1st Cir. 2003) (no duty to mitigate where the plaintiff's right either to be permitted to work his notice period or receive compensation in lieu thereof was absolute); *Cooney Indus. Trucks, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 168 F.3d 545, 546 (1st Cir. 1999) (no duty to take reasonable steps to reduce or offset damage in contract action unless the defendant's breach created the opportunity to take those steps).

Further, *Hernandez v. Balakian*, 2007 U.S. Dist. LEXIS 43680 (E.D. Cal. June 1, 2007), one of several decisions McKesson relies on to support its assertion that courts have unanimously upheld mitigation defenses to RICO claims, discusses each of the cases McKesson

---

[2] *Lopez v. Aran*, 894 F.2d 16, 19 (1st Cir. 1990), cited by McKesson, does state that if it can be reasonably effected, a duty exists "in all cases to mitigate damages," but this cannot reasonably be taken to mean, as McKesson claims, that duty to mitigate is inviolable. A reasonable interpretation of this statement is that "[t]he doctrine of mitigation of damages imposes on a party injured by either a breach of contract or a tort the duty to exercise reasonable diligence and ordinary care in attempting to minimize its damages." *Fleet Nat'l Bank v. Anchor Media Television, Inc.*, 45 F.3d 546, 561 (1st Cir. 1995). The State is unaware of any decision, published or otherwise, that interprets *Lopez* as McKesson does.

cites to as well as the contrary authority McKesson selectively omits.  It reaches the opposite

conclusion as McKesson, namely that the law is "unsettled" on whether mitigation is an

appropriate defense to RICO claims.  *Id*. at 25.  And *Marin v. Evans*, 2007 U.S. Dist. LEXIS

13492 (E.D. Wash. Feb. 27, 2007), on which McKesson also relies, acknowledges that RICO

actions, by analogy to antitrust laws, serve a different purpose than ordinary tort claims and that

in some circumstances it may be inappropriate to invoke broad common-law barriers to relief.

*Id*. at 7-8.  *Marin* reserved judgment on the defendant's mitigation defense until after the record

had been developed.  *Id*. at 7.  Here the record has been fully developed and there is no basis for

McKesson's mitigation defense:  the State did not know about the scheme until after the FDB

rollback announcement and there is no evidence that the State acted recklessly or with intent to

incur greater harm after learning of the scheme.

　　　　In fraud cases the duty to mitigate is not triggered until the plaintiff has actual knowledge

of the defendant's fraud.  *See* Memorandum in Support of Connecticut's Motion for Summary

Judgment ("Connecticut Mem."), at 9-10 (discussing case law).  "[W]here one receives actual

knowledge that he has been injured as a result of another party's fraudulent conduct, he will be

disabled from recovering for injuries occurring thereafter which he could have avoided in the

exercise of reasonable diligence."  *Morgan, Olmstead, Kennedy & Gardner, Inc. v. Schipa*, 585

F. Supp. 245, 248-49 (S.D.N.Y. 1984); *accord Katz v. First of Mich*., 1989 U.S. Dist. LEXIS

19141, at *38-39 (W.D. Mich. Mar. 13, 1989); RESTATEMENT (SECOND) OF TORTS § 918(2) and

comment a (damages for a victim of an intentional tort are only reduced if the victim is aware of

the danger and "stubbornly refuses to protect his own interests").[3]

---

[3] The RESTATEMENT represents a moderate approach.  Some courts go further and completely
bar mitigation as a defense to a fraud claim.  *See* Connecticut Mem. at 9-10; *see also Brockton
Sav. Bank v. Peat, Marwick, Mitchell & Co*., 771 F.2d 5, 13 (1st Cir. 1985) (recognizing that

Actual knowledge is required to support a mitigation defense in a fraud case because

contributory negligence is not a defense to an intentional tort; and therefore the law does not

require the plaintiff to prevent the fraud, nor does it limit recovery based on any alleged

negligence by the plaintiff in failing to uncover the fraud at some earlier date. *See*, *e.g.*,

*Greyhound Fin. Corp. v. Willyard*, 1989 U.S. Dist. LEXIS 16040, at *82 (D. Utah Dec. 23,

1989) (RICO fraud action; "[T]he court cannot allow defendants to argue that 'because your

negligence allowed me to defraud you, you should not be allowed to recover from me to the

extent that a reasonable person would not have allowed me to defraud him.'  Such a defense is

patently unfair and unjustifiable as a matter or law."); *S.C. Johnson & Son, Inc. v. Morris*, 2009

Wisc. App. LEXIS 923, at *20-21 (civil conspiracy action alleging illegal kickback scheme,

concluding that "if one party is intentionally harming another, logic would hold that the duty of

---

under New York law, "[t]he duty of mitigation is not required in the case of intentional or
malicious injuries.") (quotations, citation omitted)); *S.C. Johnson & Son, Inc. v. Morris*, 779
N.W.2d 19, 2009 Wisc. App. LEXIS 923, at *18 (Wis. Ct. App. Dec. 2, 2009) ("Wisconsin has
never applied the duty [to mitigate] to parties injured by an intentional act."); *GE Capital Corp.
v. Nucor Drilling, Inc.*, 551 F. Supp. 2d 1375, 1381 (M.D. Ga. 2008) (under Georgia law, no
duty for the non-breaching party to mitigate where defendant commits fraud); *Ameristar Jet
Charter v. Signal Composites, Inc.*, 2002 U.S. Dist. LEXIS 7670, at *15-16 (N.D. Tex. Apr. 30,
2002) (under Texas law, in cases of fraud, "the injured party owes no duty to the perpetrator of
the fraud to exercise ordinary care to prevent or minimize damages resulting from the fraud")
(quotations, citation omitted).

Other courts have concluded that the federal government has no duty to mitigate when fraud
is alleged, presumably because the government is acting in its sovereign capacity and not as a
market participant, a principle that would seem equally applicable to the State's claims in this
action. *See*, *e.g.*, *United States ex rel. Monahan v. Robert Wood Johnson Univ. Hosp.*, 2009 U.S.
Dist. LEXIS 111347, at *21 (D.N.J. Dec. 1, 2009) (the federal government "has no duty to
mitigate damages in fraud actions") (relying on *Toepleman v. United States*, 263 F.2d 697, 700
(4th Cir. 1959)); *United States ex rel. Dye v. ATK Launch Sys.*, 2008 U.S. Dist. LEXIS 85331, at
*13 (D. Utah Oct. 16, 2008) ("[A] defense of failure to mitigate damages is an improper defense
to False Claims Act claims."); *FDIC v. Flagship Auto Ctr., Inc.*, 2006 U.S. Dist. LEXIS 67876,
at *31 (N.D. Ohio Sept. 21, 2006) ("the weight of authority" provides that "the FDIC is not
subject to the state law defense of mitigation of damages"); *but see United States ex rel. Jordan
v. Northrop Grumman Corp.*, 2002 U.S. Dist. LEXIS 26622, at *49-50 (C.D. Cal. Aug. 5, 2002)
(finding an absence of any published cases addressing the specific issue of whether the
Government has a duty to mitigate damages under the False Claims Act).

the victim [to mitigate] should be less than it would be for contractual breaches or negligence.

So unless the victim, with actual knowledge of the danger, intentionally fails to act in the

protection of his or her own interests or is heedlessly indifferent to them, there is no duty to

mitigate an intentional tort.").

    *Morgan* is a leading authority on this issue.  There the plaintiffs sought to recover losses

under § 10(b) of the Securities Exchange Act of 1934 arising from a multi-layered securities

fraud.  Based on defendants' fraudulent representations, the plaintiff investment firm Morgan

Olmstead believed it was engaging in stock loan transactions with co-plaintiffs SSC and Moseley

and made periodic payments to defendants of interest it believed it owed to the co-plaintiffs and

fees it believed were owed to defendants for arranging the transactions.  At the same time,

defendants made separate false representations to co-plaintiffs SSC and Moseley, which led them

to believe they were buying and selling securities for Morgan Olmstead acting as the defendants'

agent.  585 F. Supp. at 247-48.  Like McKesson, the *Morgan* defendants asserted mitigation of

damages as a defense and argued that the plaintiffs could have prevented the fraud or put a stop

to it at anytime, had they adhered to their ordinary business practices or exercised reasonable

diligence.  *Id*. at 248.  In particular, the defendants pointed to evidence that plaintiffs SSC and

Moseley were repeatedly notified that they were engaged in stock loan transactions, but that they

ignored such notification and continued to treat the loans as though they were normal sale

transactions.  *Id*.  The court rejected this defense, recognizing that imputed knowledge alone

does not trigger a duty to mitigate:

> There can be no dispute with the general principle that one who
> fails to avoid the consequences of a tort is disabled from
> recovering those damages which he could reasonably have
> avoided.…  Thus, where one receives *actual knowledge* that he has
> been injured as a result of another party's fraudulent conduct, he
> will be disabled from recovering for injuries occurring thereafter

> which he could have avoided in the exercise of reasonable
> diligence.…
>
> [The defendants] seek to expand this principle in the instant case to
> cover a situation where plaintiffs' negligence delayed discovery of
> the alleged fraud and therefore allowed damages to continue to
> grow.…
>
> No social value would be served by allowing a defendant to assert
> the very weakness he has exploited as a ground for limiting the
> defrauded party's claim against him for damages. Instead, it would
> merely insulate one who has committed an intentional, anti-social
> act from accounting to the person he has injured for all of the
> consequences flowing from that act, and thus might have the
> undesired secondary effect of promoting fraudulent activity.

585 F. Supp. at 248-49 (emphasis added).

In a recent decision affirming a $203.8 million verdict in a civil conspiracy case alleging

a conspiracy to overcharge the corporation for transportation services in exchange for kickbacks

paid to the plaintiff's employees a Wisconsin appeals court reached a similar conclusion:

> [E]xpanding the duty to mitigate in such a way as to place a burden
> on the victim [of an intentional tort] to investigate whether warning
> signals existed would allow tortfeasors to purposely exploit a
> victim's weak internal investigation mechanism and then use it as
> an affirmative defense at trial.  We conclude that … would place
> too high a burden on victims.  Thus, as the trial court ruled, actual
> knowledge is required for the duty of mitigation to apply.

*Morris*, 2009 Wisc. App. LEXIS 923, at *2-3; *see also Union Planters Bank, N.A. v. Cont'l Cas.*

*Co.*, 478 F.3d 759, 765 (6th Cir. 2007) (mortgage lender fraud, rejecting mitigation defense

where the bank was allegedly negligent in failing to discover the fraud); *China Trust Bank of*

*N.Y. v. Standard Chtd.*, 1998 U.S. Dist. LEXIS 13945, at *12 (S.D.N.Y. Sept. 3, 1998) (fraud

action, holding that "it is no defense to an allegation of intentional fraud that the victim's

negligence delayed the discovery of the fraud."); *Katz*, 1989 U.S. Dist. LEXIS 19141, at *37-39

(securities action, holding that plaintiff's alleged negligence in failing to uncover the fraud was

insufficient to trigger a duty to mitigate).

These decisions are consistent with the RESTATEMENT rule, discussed in the State's opening brief, providing that the victim of an intentional tort is entitled to a full recovery from the tortfeasor "unless the injured person, realizing the danger, intentionally fails to act in the protection of his own interests or is heedlessly indifferent to them." RESTATEMENT (SECOND) OF TORTS § 918, comment a. Mere carelessness or stupidity does not trigger a duty to mitigate, but the person who knowingly and "stubbornly refuses to protect his own interests is given no legal redress." *Id. See also Sanford Inst. for Sav. v. Gallo,* 156 F.3d 71, 74 (1st Cir. 1998) ("[T]he victim's contributory negligence is not a defense to an intentional tort[.]") (relying on RESTATEMENT (SECOND) OF TORTS § 545A); *cf. In re Pharm. Indus. Average Wholesale Price Litig.,* 252 F.R.D. 83, 102-103 (D. Mass. 2008) ("Defendants mention, in passing, comparative fault but do not explain how it is applicable in a deception case.").

Courts in both First Circuit and elsewhere routinely rely on the principles set forth in the RESTATEMENT (SECOND) OF TORTS to reach decisions on RICO fraud claims. *See, e.g., Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994) (relying on RESTATEMENT (SECOND) OF TORTS § 876). Under circumstances similar to the facts before this Court, an Arizona appellate court applied the RESTATEMENT principle to reject a mitigation defense to a state law civil RICO claim:

> The record shows that appellants' theory on this issue was that Aetna was slow in stopping payment on the checks which they had forged. In other words, appellants contend that Aetna should not recover damages, or that the damages should be mitigated because Aetna failed to stop them from the final act of their crime. Assuming *arguendo* that this novel theory falls under the doctrine, the court did not err in its initial refusal to submit the issue to the jury and its later submission at trial was gratis because the doctrine does not prevent recovery from an intentional tort unless the injured person, after the commission of the tort, "… with knowledge of the danger of the harm intentionally or heedlessly

failed to protect his own interests." RESTATEMENT (SECOND) OF
TORTS, § 918 (1979).

*Aetna Cas. & Sur. Co. v. Dini*, 821 P.2d 216, 219 (Ariz. Ct. App. 1991); *see also Greyhound Fin.*

*Corp.*, 1989 U.S. Dist. LEXIS 16040, at *82 (relying on RESTATEMENT (SECOND) OF TORTS

§ 918(2) and *Morgan* to hold that contributory negligence does not apply to federal RICO fraud

claims).

    None of McKesson's citations support a contrary view of the law. The cases McKesson

relies on to suggest that the First Circuit imposes the same duty to mitigate irrespective of a

defendant's intentional misconduct do not support that proposition. In *Cambridge Plating Co. v.*

*NAPCO*, 876 F. Supp. 326 (D. Mass. 1995), *reversed and vacated in part*, 85 F.3d 752, 772 (1st

Cir. 1996) the court ruled, and was upheld on appeal, that the plaintiff, who asserted breach of

contract as well as intentional and negligent misrepresentation, had a duty to mitigate once it was

specifically informed that it was missing a vital part, and that its failure to act for 15 months after

receipt of the news was an unreasonable delay, which warranted a reduction in damages. 85

F.3d at 772. This is consistent with the RESTATEMENT rule requiring a victim of an intentional

tort to take reasonable steps to mitigate once it has actual knowledge of the defendant's

misconduct.[4] The employment decisions, *Harding v. Cianbro Corp.*, 498 F. Supp. 2d 344 (D.

Me. 2007) and *Rodriguez-Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52 (1st Cir. 2005) are

also distinguishable because of social policies discouraging economic waste associated with

willful unemployment. *See* RESTATEMENT (SECOND) TORTS § 918, comment f and illustrations

---

    [4] The State also notes that intentional misrepresentation under Massachusetts law is hardly
exemplary of intentional torts. *See Cambridge Plating Co. v. Napco, In*c., 85 F.3d at 768 n.16
(explaining that Massachusetts law does not require proof that the defendant knew that it was
making a false statement or that it was reckless in making a false statement or that it intended to
deceive the plaintiff). Moreover, in *Cambridge Plating* the First Circuit vacated the district
court's damages award for the intentional misrepresentation claim. *Id.* at 774.

11 and 12 (providing that in cases involving employment torts, intentional or otherwise, losses may be reduced if a plaintiff has other employment opportunities). In *Rodriguez-Torres v. Caribbean Forms Mfr., Inc*., the court merely noted that evidence of the plaintiff's efforts to procure other employment may be necessary to support an award of future damages, otherwise the award may be overly speculative. 399 F.3d at 67. Similarly, in *Harding* the plaintiff was required after discharge to make "some effort" to secure other employment. 498 F. Supp. 2d at 358.

      *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 41 (1st Cir. 2009) does not even discuss mitigation. The issue there was whether a pharmacy association, which was not a member of the FDB settlement class and had not objected to settlement, had standing to intervene on appeal of the Court's order approving the FDB settlement. In the passage cited by McKesson the court merely acknowledged that the impact of the rollback was uncertain due to the "creeping recapture" by TPPs and PBMs of losses caused by falsely inflated AWPs, an issue which the court also acknowledged was hotly disputed. *Id.* At best the issue discussed by the court could be relevant to causation, but not to mitigation. *See id*. and n.10. McKesson's remaining citations are inapposite because none involve intentional torts. *Continental Group, Inc. v. Lincoln Land Moving & Storage, Inc*., 710 F.2d 368 (7th Cir. 1983) (negligence action); *Tauber v. City of Chicago*, 1997 U.S. Dist. LEXIS 7332 (N.D. Ill. May 16, 1997) (action for breach of a consent decree with no allegations of fraud); *Spedag Americas, Inc. v. Petters Hospitality & Entm't Group LLC*, 2008 U.S. Dist. LEXIS 62911 (S.D. Fla. Aug. 18, 2008) (freight carrier's suit to enforce a debt against freight consignees with no

010010-13  362378 V1

allegations of fraud); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Millar*, 274 F. Supp. 2d 701

(W.D. Pa. 2003) (breach of contract with no allegations of fraud).[5]

McKesson's efforts to discard the State's cited authority are similarly ineffective.  First,

McKesson fails to distinguish between intentional tort claims and ordinary tort and contract

claims.  For example, *Lone Mt. Processing, Inc. v. Bowser-Morner, Inc*., 2005 U.S. Dist. LEXIS

16340 (W.D. Va. Aug. 10, 2005) is not an intentional tort case.  The State cited this case for the

proposition that a party is not required to mitigate when it "does not know and is *not chargeable*

*with* notice," *i.e.*, when it does not and *could not know*, that it has been injured by another's

actions,[6] so it is hardly surprising that the *Lone Mt.* court considered imputed knowledge in its

assessment of the mitigation defense.  Similarly *Security Nat'l Bank v. Recreational Dimensions,*

*Inc*., 1991 Mass. App. Div. 21 (1991) is a breach of contract suit, alleging mutual mistake, not

fraud, thus the claimant had a duty of reasonable care to safeguard against a breach.  Further, the

State cited *Willever v. Sovereign Bank*, 1998 Pa. Dist. & Cnty. Dec. LEXIS 79 (Pa. C.P. 1998),

*Union Planters Bank, N.A. v. Continental Cas. Co.*, 478 F.3d 759 (6th Cir. 2007) and *Peck Iron*

*& Metal Co. v. United States*, 603 F.2d 171, 172-73 (Cl. Ct. 1979) for the proposition that there

is not duty to mitigate when the fraud is actively concealed from plaintiff and the plaintiff took

appropriate action once it was discovered,[7] so it is puzzling that McKesson relies on the active

concealment factor as a basis for distinguishing these cases – especially since both McKesson

and FDB engaged in active concealment of their fraud and continue to this day to deny their

---

[5] The State notes that *Merrill, Lynch* affirms the legal principle that "an injured party is not obligated to mitigate damages when both parties have an equal opportunity to do so," an established principle whose continued viability McKesson vociferously denies.  *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Millar*, 274 F. Supp. 2d at 709.  *See infra* Section II.D.

[6] Connecticut Mem. at 10 (emphasis added).

[7] *Id.*

involvement in the markup scheme.  The fact remains, the State has not alleged negligence or

breach of contract by McKesson, but rather racketeering predicated on mail and wire fraud, thus

the RESTATEMENT (SECOND) OF TORTS § 918(2) standard applies and the State had no duty to

mitigate absent actual knowledge of McKesson's fraud.  *Greyhound Fin. Corp.*, 1989 U.S. Dist.

LEXIS 16040, at *82.[8]

**B.     There is no Evidence of Actual Knowledge of the Fraud Until Sometime After the
FDB Settlement Announcement in October 2006.**

McKesson has not met its burden of bringing forth evidence that raise a material issue of

fact sufficient to defeat Connecticut's summary judgment motion.  Sometime before it filed this

lawsuit and after FDB announced its settlement the State became aware of the FDB rollback and

allegations of fraud.[9]  Even drawing all reasonable inferences in McKesson's favor, the most that

---

[8] McKesson also contends that *Kratze v. Independent Order of Oddfellows*, 500 N.W.2d 115
(Mich. 1993) has "nothing to do with mitigation."  This is highly misleading.  The footnote
Connecticut cited states in full:

> Defendant argues that the Court of Appeals erred in holding that
> plaintiff had no obligation to avoid damages that he could have
> reasonably avoided.  While we do not reach this argument, we note
> our agreement with defendant's assertion.  The doctrine of damage
> avoidance has long been recognized in Michigan.  *See Gilbert v.
> Kennedy*, 22 Mich. 117 (1871); *Talley v. Courter*, 93 Mich. 473;
> 53 N.W. 621 (1892); *McCullagh v. Goodyear Tire & Rubber Co.*,
> 342 Mich. 244; 69 N.W.2d 731 (1955).  It is only where the
> damage is the result of the "defendant's intentional or positive and
> continuous tort" that the doctrine of avoidable consequences will
> not apply.  *Allen v. Morris Building Co.*, 360 Mich. 214; 103
> N.W.2d 491 (1960).  *See also* 4 RESTATEMENT TORTS, 2D,
> § 918(2), p 500.

*Id*. at 119 n.2.  This case clearly states the Michigan Supreme Court's view of the doctrine of
mitigation and its inapplicability to intentional torts.

[9] In an earlier version of the Complaint the State alleged that the earliest it could have known
about the scheme was when the *New England Carpenters* lawsuit was filed.  *See* Connecticut's
First Amended Complaint [Docket No. 22], ¶ 245.  However, that statement in no way binds the
State legally or logically to an "admission" that it knew of the scheme *at* the time of the
*Carpenter's* filing.  Moreover, the allegation was made before discovery had commenced.  There

010010-13  362378 V1

can be inferred from the record is that before October 2006 the State was on notice that its

prescription drug costs were rising, that some manufacturers distrusted FDB and disagreed with

its pricing decisions on individual drugs, that FDB had considered in 2004 stopping its

publication of AWPs, and that the State could have learned by the summer of 2004 that AWP

markups had increased over time.[10]

The record is devoid of any evidence that Connecticut knew AWP increases were caused

by McKesson's secret scheme to change the AWP markups.  As the Court is aware from the

*Carpenters* litigation, there is no evidence that any payor, not even the largest and most

sophisticated insurance companies, was aware of the scheme, so it is not surprising that

Connecticut with its relatively small staff failed to discover it.  But even if the State had been

shortsighted or careless in failing to discover the fraud, this would still not be enough to expand

its duty to mitigate.  RESTATEMENT (SECOND) OF TORTS, § 918, comment a.  As a matter of law,

therefore Connecticut's duty to mitigate did not arise until it learned of the scheme through the

FDB settlement announcement.

**C.     McKesson has Pointed to Nothing in the Record to Show that Connecticut Acted
Recklessly or with Intent to Injure Itself by Maintaining its Reimbursement Rate to
Benefit from the Rollback.**

McKesson also sets its own burden on mitigation far too low.  The fraud victim is "not

barred from full recovery by the fact that it would have been reasonable for him to make

---

is simply no evidence that Department of Social Service officials were aware of the *Carpenters*
lawsuit when it was filed.  *See* Connecticut Mem. at n.6 (citing evidence that the State was
unaware of the scheme prior to the FDB announcement of the settlement).  The most likely date
state employees would have become aware of the scheme was September 2007.  *See* Berman
Decl., Ex. 8 (February 5, 2010 Deposition of Ellen Arce, EDS, the State's fiscal agent at 72:2-
74:1 (testifying that by September 2007 she had learned of the *FDB* lawsuit and the allegations
that it was raising markups and would have had discussions with the State about the FDB
settlement at that time)).

[10] McKesson Opp. at 9-12.

expenditures or subject himself to pain or risk; *it is only when he is unreasonable in refusing or failing to take action to prevent further loss that his damages are curtailed*." RESTATEMENT (SECOND) OF TORTS § 918, comment c. Even in contract and negligence cases, the law does not impose upon the plaintiff a "duty to take outlandish chances in order to mitigate its damages," *Allied Int'l v. International Longshoremen's Ass'n*, 814 F.2d 32, 39 (1st Cir. 1987), or even to choose the best course of action. *Veranda Beach Club Ltd. P'ship v. Western Sur. Co*., 936 F.2d 1364, 1386 (1st Cir. 1991). The plaintiff alleging breach of contract or negligence need only take reasonable steps to minimize its losses; it is not required to incur unreasonable expense. *Culebra II, LLC v. River Cruises & Anticipation Yachts, LLC*, 564 F. Supp. 2d 70, 79 (D. Me. 2008). "If the course of conduct chosen by the plaintiff was reasonable, the plaintiff can recover despite the existence of another reasonable course of action that would have further lessened plaintiff's damages." *Kurke v. Oscar Gruss & Son, In*c., 454 F.3d 350, 357 (D.C. Cir. 2006) (quotations, citation omitted). The "issue is not whether plaintiff chose the path most likely to prevent future damage, but whether plaintiff's decision was reasonable under the circumstances." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams*., 618 F. Supp. 2d 280, 307 (S.D.N.Y. 2009). "[T]o prove that a plaintiff's adherence to an initially proper decision how to mitigate damages has become unreasonable, the defendant must show that such adherence had become not merely erroneous but palpably so.…" *Federal Ins. Co. v. Sabine Towing & Transportation Co. Inc*., 783 F.2d 347, 350 (2d Cir. 1986) (citation omitted).

McKesson has pointed to no evidence to demonstrate that the State "intentionally or heedlessly failed to protect [its] own interests" after learning of the fraud when it chose not to change its drug reimbursement formula. RESTATEMENT (SECOND) OF TORTS § 918(2). Maintaining its reimbursement rate after the announcement of the rollback was not reckless or

unreasonable. The rollback specifically addressed the State's injury by reversing the effects of the scheme on each of the subject drugs, rendering any additional reductions to the reimbursement rate unnecessary. It is undisputed that Connecticut believed it would save $21 million dollars per year as a result of the rollback.

While it is not necessary for the State to prove that it chose the best course of action, the record amply supports the finding that it was a reasonable decision under the circumstances. Had it changed benchmarks, it not only would have lost the benefits of the rollback but it also would have incurred considerable additional expense.[11] The same fate awaited the State if it had changed to a different source of AWPs and additionally it would have required an estimated two years to implement.[12] A lower AWP-based reimbursement rate might have been theoretically feasible, but difficult to implement, given the pending rollback and could have led to diminished participation by pharmacies and a possible breach of the State's duty to provide its beneficiaries with adequate access to healthcare.[13] *See* RESTATEMENT (SECOND) OF TORTS, § 918, comment h ("Ordinarily it is not reasonable to require a person threatened with harm to commit a trespass or other tort in order to lessen the damage."). McKesson has cited to no evidence in the record to demonstrate that the State's decision to maintain its reimbursement rate was reckless or motivated by an intent to run up its damages.

---

[11] Berman Decl., Ex. 6 (Starkowski Dep. at 89:18-90:1; 132:4-133:3 (the difficulties of switching to a WAC-based reimbursement model)).

[12] Berman Suppl. Decl., Ex. 1 (Arce Dep. at 56:15-57:22).

[13] Berman Suppl. Decl., Ex. 2 (Deposition of David Parrella at 126:17-127:18 (reimbursement rates must strike a balance between the State's reasonable costs and its obligation to provide its beneficiaries with sufficient access to healthcare)).

- 14 -

**D.    McKesson Could Easily have Negated the Harm to the State by Publicly Acknowledging its Scheme, Thereby Providing the Necessary Transparency for the State to Enact an Adjusted Reimbursement Rate.**

McKesson's response to the State's argument that it owes no duty to mitigate because McKesson was in an equal or better position than the State to prevent further harm is remarkable for its audacity. There is an abundance of evidence that McKesson spearheaded the scheme and that it caused billions of dollars of losses in the healthcare industry, yet McKesson protests it was powerless to stop the State's losses because only FDB could have changed the markups. McKesson's argument is easily discredited. The March 15, 2005 announcement by FDB that it would cease surveying wholesalers to support its determination of AWPs merely perpetuated the fraud that the change in markups was based on fair and objective market surveys. To this day McKesson continues to deny its scheme to raise AWPs. Had McKesson publicly acknowledged its conspiracy with FDB, it would have smoothed the State's way to enacting legislation to change to a different reimbursement rate, *e.g.* a WAC or AMP-based format, to eliminate the effects of the scheme. But without an admission of wrongdoing or a legal ruling that the AWPs had been wrongfully inflated by McKesson's scheme, the State was in a much more difficult position to justify changes to its reimbursement rate.

It is well established that the duty to mitigate only requires a plaintiff to make reasonable efforts to reduce its damages. *Fleet Nat'l Bank v. Anchor Media Television*, 45 F.3d at 561. The purpose of the mitigation is to limit recovery where the harm is reasonably avoidable. The doctrine of equal opportunity, which the First Circuit applied in *Computer Sys. of Am., Inc. v. Data Gen. Corp.*, 921 F.2d 386 (1st Cir. 1990), modifies this rule and eliminates the duty when the party asserting the mitigation defense had an equal or better opportunity to prevent further the losses but failed to do so itself. *See id.* at 392-93 (relying on *S.J. Groves & Sons, Co. v. Warner Co.*, 576 F.2d 524, 530 (3d Cir. 1978) (holding that a defendant who is in an equal

position to prevent the harm "is in no position to contend that the plaintiff failed to mitigate," *id.* at 530).

In a throwaway footnote McKesson contends that some of the cases the State cites to in support of this doctrine "are either bad law or easily distinguishable." Under the "bad law" category, McKesson refers to the quotation of DOBBS, HANDBOOK ON THE LAW OF REMEDIES § 3.7 at 186 (1973) in *S. Cal. Fed. S&L Ass'n v. United States*, 57 Fed. Cl. 598, 640 (2003), *aff'd in part, rev'd in part on other grounds, & remanded*, 422 F.3d 1319 (Fed. Cir. 2005). Contrary to McKesson's reading of the case, the Federal Circuit never reached the mitigation issue at all and thus did not call into question the court's reliance on the equal opportunity doctrine, but rather it partially reversed the Court of Claims' order because it "erred in holding that the Individual Plaintiffs have standing to sue for breach of contract" and thus vacated in its entirety the court's damages award based on that liability. *S. Cal. Fed. S&L Ass'n v. United States*, 422 F.3d 1319, 1324 (Fed. Cir. 2005). McKesson's basis for distinguishing *Travelers Indem. Co. v. Maho Machine Tool Corp*., 952 F.2d 26 (2d Cir. 1991) fares no better. The equal opportunity rule was one of three independent bases for reversing the lower court's order. *Id.* at 31. Neither did the court in *Wartzman v. Hightower Productions., Ltd*., 456 A.2d 82 (Md. Ct. App. 1983) reject the defendant's mitigation defense because he was the plaintiff's former attorney, as McKesson suggests, but rather because the defendant, who was hired to form the corporation and failed to ensure that it complied with securities laws, did not offer to pay for a securities specialist to resolve the plaintiff's legal problems. *Id.* at 88. McKesson's cursory dismissal of the Ninth Circuit's endorsement of the equal opportunity doctrine in commodities disputes in *Monex Int'l, Ltd. v. CFTC*, 83 F.3d 1130 (9th Cir. 1996) is also unfounded. The Ninth Circuit specifically approved the administrative judge's ruling on mitigation as "consistent with [the

Commodity Futures Trading] Commission precedent … that 'a plaintiff is not under a duty to mitigate damages if the other party, who had the duty to perform under the contract, had equal opportunity to perform and equal knowledge of the consequences of nonperformance.'" *Id.* at 1135 (citation omitted).

### III.    CONCLUSION

McKesson itself concedes that its statute of limitations and mitigation defenses have no application to the State's CUTPA claims and therefore these defenses to the CUTPA claims should be dismissed.  The sole remaining issue is the applicability of the mitigation defense to the State's RICO claims.  The State was unaware of the scheme until sometime after the FDB settlement announcement and acted reasonably in maintaining its AWP-reimbursement method when the rollback was announced.  Connecticut therefore requests that the Court dismiss McKesson's mitigation defense in its entirety.


DATED:  April 12, 2010                    By  **s/ Steve W. Berman**
                                          Steve W. Berman
                                          Sean R. Matt
                                          Nicholas Styant-Browne
                                          Barbara Mahoney
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                          1301 Fifth Avenue, Suite 2900
                                          Seattle, WA  98101
                                          Telephone:  (206) 623-7292
                                          Facsimile:  (206) 623-0594

                                          David Nalven (BBO#54722)
                                          Edward Notargiacomo (BBO #567636)
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                          55 Cambridge Parkway, Suite 301
                                          Cambridge, MA  02142
                                          Telephone: (617) 482-3700
                                          Facsimile: (617) 482-3003

Richard Blumenthal
Attorney General
Robert B. Teitelman
Assistant Attorney General
Thomas J. Saadi
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Telephone:  (860) 808-5355
Facsimile:  (860) 808-5391

- 18 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on April 12, 2010.


      s/ Steve W. Berman
Steve W. Berman

010010-13 362378 V1